S02A1208. DILLINGHAM v. THE STATE.
(571 SE2d 777)

SEARS, Presiding Justice.

After appellant Keith Dillingham's first trial ended in a mistrial, he was convicted at a second trial of murder and aggravated assault and sentenced to life in prison.[1] He now appeals. Having reviewed the record, we conclude that the trial court did not abuse its discretion in denying appellant's request for a continuance or in allowing

---

[2] The court responded to the question by instructing the jurors to rely on their recollection of the testimony.

[1] The crimes occurred on July 18, 1997, and appellant was indicted on July 14, 1998. Appellant's first trial ended in a mistrial on August 27, 1999. A new trial was commenced on August 30, 1999, and on September 8, 1999, appellant was convicted of felony murder and aggravated assault. He was sentenced on February 11, 2000, to life in prison. Appellant's new trial motion was filed on February 28, 2000, and amended on October 9, 2000. The trial transcript was certified on July 11, 2000. The new trial motion was denied by an order entered on June 12, 2001, which was amended on July 3, 2001, to appoint new appellate counsel. On July 11, 2001, the trial court granted a 30-day extension for the filing of a notice of appeal. A timely notice of appeal was filed on August 9, 2001. The appeal was docketed with this Court on April 25, 2002, and submitted for decision without oral argument on June 17, 2002.

lay opinion testimony by a retired police officer. Therefore, we affirm.

The evidence at trial showed that on July 18, 1997, appellant, co-defendant Jones, and co-defendant Hunt were together while appellant's car was being repaired. Down the street from the trio, the victim's van sat parked in front of a house. The victim and co-defendant Jones had been dating the same woman, and had fought over her several times. Appellant brought the victim's van to the two co-defendants' attention. After his car was repaired, appellant drove down the street to the house, with co-defendant Jones riding as a passenger. The victim sat on the front porch of the house with four other individuals. Appellant exited the car and stood on the porch, where he confronted the victim about his earlier confrontations with co-defendant Jones. Co-defendant Hunt then ran up to the porch and shot the victim, killing him. Appellant stood over the victim's body and said, in essence, that the victim had been warned about what would happen to him. Appellant then walked calmly back to his car. Appellant, Jones and Hunt drove away from the scene in appellant's car.

1. The evidence at trial, construed most favorably to the jury's verdicts, was sufficient to enable rational triers of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.[2] Evidence of appellant's conduct prior to, during, and after the commission of the murder authorized the jury to infer that he intentionally encouraged and participated in the crime.[3] Appellant's claim that certain testimony was unreliable is unavailing, as witness credibility is always an issue for the jury's determination.[4]

2. The trial court did not abuse its discretion by denying a continuance so that appellant could attempt to recall a State's witness who could not be located. At appellant's first trial, the witness testified on behalf of the State. At appellant's second trial, which is the subject of this appeal, the witness testified on direct and cross-examination, then was excused, subject to recall. Thereafter, appellant sought to recall the witness in order to attempt to impeach his testimony with the transcript of his testimony from the first trial. However, despite diligent efforts over the course of several days, appellant was unable to locate the witness, even though he remained under subpoena. The trial court then issued an attachment order, which the sheriff tried unsuccessfully to serve at the witness's residence. After learning that the witness could not be located, the trial court proposed that appellant make an offer of proof regarding the witness's earlier testimony. Appellant proffered what he expected to

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Simpson v. State*, 265 Ga. 665 (461 SE2d 210) (1995); see OCGA § 16-2-20 (b) (4).

[4] OCGA § 24-9-80; *Jenkins v. State*, 269 Ga. 282, 286 (498 SE2d 502) (1998).

glean from the witness on recall examination, and the witness's testimony from the first trial was then read into evidence.

On appeal, appellant claims the trial court should have granted a continuance until the following morning to permit appellant one more opportunity to locate the missing witness, and he claims the use of transcribed testimony from the mistrial deprived him of his Sixth Amendment right of confrontation.

OCGA § 24-3-10 permits the admission of testimony given by an inaccessible witness under oath in a former trial on substantially the same issue and between substantially the same parties. Where, as here, an inaccessible witness's prior testimony satisfies the requirements of OCGA § 24-3-10, the testimony is deemed "inherently reliable" and its use does not violate the accused's right of confrontation.[5]

Whether a witness is inaccessible within the meaning of § 24-3-10 is a decision left to the discretion of the trial court, which will not be reversed absent manifest abuse.[6] In this matter, appellant informed the trial court that, despite diligent efforts by both appellant and the sheriff, the witness could not be located and his appearance could not be secured. There was no indication made to the trial court that the witness could be located if an additional continuance was granted. Under these circumstances, we conclude that the trial court did not abuse its discretion either in determining that the witness was inaccessible or in denying appellant's request for an additional continuance.

3. At trial, two witnesses who testified on behalf of the State identified co-defendant Hunt, the purported shooter, as someone they had seen with appellant near the crime scene shortly before the murder occurred. On cross-examination, these two witnesses conceded that several months after the murder, they were shown a photographic lineup containing the photo of co-defendant Hunt and had not identified Hunt as someone they had seen with appellant before the murder.[7] When questioned about this discrepancy at trial, one of the witnesses stated that when he "look[s] at photographs, they got a way of looking different from looking at a person in person."

Thereafter, State's witness Carawan, a retired City of Atlanta police officer, testified on behalf of the State. Carawan stated that on behalf of her current employer, the District Attorney's Office, she had assembled several photographic lineups, including the one containing co-defendant Hunt's photograph. Carawan had then shown the

---

[5] *Walton v. State*, 272 Ga. 73 (526 SE2d 333) (2000).

[6] *Smith v. State*, 247 Ga. 453, 454-455 (276 SE2d 633) (1981).

[7] The two witnesses were able to identify appellant from a photographic lineup shown to them after the crimes were committed (they also were familiar with him before the crimes were committed).

photographic lineups to potential witnesses to the crimes, including the two witnesses discussed above.

On redirect examination, the State asked Carawan whether a computer-generated composite drawing, a photographic lineup, or an in-person lineup is most likely to produce a reliable identification from a witness. Carawan replied that she believes an in-person lineup is most reliable, because it provides an opportunity to view an individual's entire physical profile and body structure, and is "just a better way of identifying . . . people" than composite drawings or photographic lineups.

Appellant claims that in allowing this testimony, the trial court abused its discretion by permitting a non-expert witness to provide an expert opinion on the issue of eyewitness identification. Because we believe that Carawan's testimony was properly allowed as lay opinion testimony, we disagree. We note initially that there was no attempt to qualify Carawan as an expert.[8] A lay witness may relate her opinion as to the existence of any fact so long as it is based upon her own experience and observations, and so long as the matter referred to is within the scope of the average juror's knowledge.[9] In this matter, Carawan's experience with suspect identification was established by direct testimony, and the record shows that her statement was based upon extensive experience and training as a police officer and homicide investigator.[10] Carawan did not attempt to render an opinion concerning the trustworthiness (or lack thereof) of any individual eyewitness, which is disallowed.[11] To the contrary, Carawan merely stated that in her lay opinion, in-person identification is a better means of identifying suspects, and she then supported her opinion with common-sense facts and reasons that we believe are within the ken of the average juror. Furthermore, we have previously recognized that:

> when the subject matter of an inquiry relates to numerous facts perceived by the [lay witness'] senses, to a series of instances passing under the observation of a witness, or to a variety of circumstances . . . which under the limitations of language, cannot be adequately described and presented to the jury with the same force and clearness as they appeared to the witness, the witness may state his . . . opinion based upon the facts and circumstances observed by him.[12]

---

[8] See *Johnson v. Knebel*, 267 Ga. 853, 855 (485 SE2d 451) (1997).

[9] OCGA § 24-9-65; *Johnson*, 267 Ga. at 855; Milich, Georgia Rules of Evidence, § 15.2 (1995).

[10] See *Felder v. State*, 270 Ga. 641, 645 (514 SE2d 416) (1999).

[11] See *Johnson v. State*, 272 Ga. 254, 257, n. 3 (526 SE2d 549) (2000).

[12] *Johnson*, 267 Ga. at 856.

This is just such a situation. Carawan sought to relate her lay opinion as to the most reliable means of suspect identification, which was based upon her own observations in numerous situations. Those observations led Carawan to reach a conclusion that could not be adequately described for the jury unless Carawan also stated the personal opinion she drew from her experience and observations.

Accordingly, for the reasons explained above, we conclude that the trial court did not err in permitting Carawan's lay opinion testimony regarding her belief that in-person identification is more reliable than identification by composite drawing or photographic line-ups.[13]

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 28, 2002.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Ruth M. Bebko, Assistant Attorney General*, for appellee.

---

[13] See *Felder*, 270 Ga. at 645.