A05A2351. HARDEMAN v. THE STATE.
(626 SE2d 138)

PHIPPS, Judge.

After a bifurcated jury trial, Johnny R. Hardeman was convicted of multiple offenses in connection with his shooting of a firearm. He contends that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of aggravated assault upon Mishana Heard by discharging a firearm from a motor vehicle toward her. Also he contends that the trial court erred in admitting prior, sworn testimony of one of the victims, Frank Thrasher, who did not testify at trial. Because Hardeman has demonstrated no reversible error, we affirm.

Viewed in a light to favor the jury's verdicts, the evidence showed that on November 4, 1999, Hardeman, his friend Christopher Johnson, Thrasher, and Mariolyn Roberts were visitors at Heard's home. Hardeman and Thrasher became involved in an argument outside. Heard testified that she and Roberts were sitting on the front porch when she heard a gunshot, which frightened her because she did not know the target. She then saw Thrasher flee into the house next door and Hardeman follow him with a gun. She soon heard additional gunfire next door.

Eddie Horton lived in the house next door with his nephew, Richard White. Horton testified that Thrasher and White ran into his home, followed by Hardeman; that while standing at the front door, Hardeman fired a bullet over Thrasher's head; that the bullet lodged in the door panel above White's bedroom door; and that Hardeman then left.

Heard saw Hardeman exit Horton's house and get into a truck with Johnson. Heard testified that, as the two were speeding away, Hardeman fired shots at Thrasher's truck, which was parked in front of Heard's home. She testified that she and Roberts were still on the porch, but she did not believe that Hardeman had intended to shoot them. Nevertheless, he fired gunshots in her direction and she was afraid. Neither she nor Roberts was struck by a bullet.

Lieutenant Keith Crum of the Newton County Sheriff's Department was one of the law enforcement officers dispatched to the scene. He went to Horton's residence and interviewed Thrasher, who illustrated what had happened there. Crum noted that Thrasher was excited and agitated and that he stood approximately 5'10" tall. Investigating the inside of the house, Crum discovered a bullet hole in the wall above a seven-foot doorway that led into a bedroom. Inside that bedroom, Crum found a spent bullet on the bed. Outside the house, Crum found two .380 shell casings. One was on the porch and the other was about fifteen feet from the side of the porch. Crum testified that he was familiar with the mechanism of a .380 gun. He also stated that, if a shooter had been standing directly in front of the doorway facing the front door and pointing the gun toward the doorway of the bedroom where the bullet was retrieved, "the shell would have kicked back and to the right, which would have pushed it out the front door, onto the porch."

Crum also interviewed Heard and Roberts. Law enforcement officers collected four spent shell casings from the road in front of Heard's house. He estimated that Heard's house was approximately 30 feet from the road.

The jury found Hardeman not guilty of aggravated assault by shooting a gun in Heard's direction. The jury found Hardeman guilty of aggravated assault by shooting a gun at and in the direction of Thrasher; guilty of aggravated assault by discharging a firearm from within a motor vehicle toward Heard; guilty of reckless conduct for firing a gun in the direction of Heard and Roberts; guilty of reckless conduct for firing a gun in the direction of Thrasher, Horton, and White in a house occupied by them; guilty of discharging a firearm on or within 50 yards of a public highway or street; and guilty of possession of a firearm during the commission of a felony (aggravated assault). After evidence of Hardeman's conviction for a 1993 sale of cocaine was admitted, the jury found Hardeman guilty of possession of a firearm by a convicted felon.

1. Hardeman contends that the trial court erred in denying his motion for directed verdict of acquittal on the charge of aggravated assault upon Heard by discharging a firearm from within a motor vehicle toward her in violation of OCGA § 16-5-21 (a) (3). Hardeman argues that there was insufficient evidence to sustain a conviction for that crime. In addition, he points out that the jury found him not guilty of aggravated assault upon Heard by shooting a gun in her direction in violation of OCGA § 16-5-21 (a) (2).

A person commits simple assault when he commits an act that places another in reasonable apprehension of immediately receiving

a violent injury.[1] Under OCGA § 16-5-21 (a) (3), aggravated assault occurs when a person assaults "without legal justification by discharging a firearm from within a motor vehicle toward a person or persons." Under OCGA § 16-5-21 (a) (2), aggravated assault occurs when a person assaults "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

(a) The standard of review for denial of a motion for directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction.[2] Thus, we construe the evidence in favor of the jury's verdicts and determine whether a rational trier of fact could have found Hardeman guilty beyond a reasonable doubt of the crimes of which he was convicted.[3] Evidence that Hardeman fired a gun in Heard's direction from within the vehicle in which he was speeding away, thereby frightening her, is sufficient to sustain Hardeman's conviction for committing aggravated assault upon Heard as defined by OCGA § 16-5-21 (a) (3).

(b) This result is not changed by the fact that the jury found Hardeman not guilty of aggravated assault upon Heard as defined in OCGA § 16-5-21 (a) (2). The cited charges did not result in mutually exclusive verdicts.[4] And to the extent that Hardeman complains that his conviction under OCGA § 16-5-21 (a) (3) is inconsistent with the acquittal for a charge under OCGA § 16-5-21 (a) (2), "any alleged inconsistency cannot be used as an avenue to challenge the conviction since the 'inconsistent-verdict rule' has been abolished in this state."[5]

2. Pointing out that Thrasher did not testify before the jury, Hardeman contends that the trial court erred by allowing Thrasher's testimony given at Hardeman's probation revocation hearing to be read into evidence.

The contested testimony was admitted under OCGA § 24-3-10, which provides,

> The testimony of a witness since deceased, disqualified, or inaccessible for any cause which was given under oath on a former trial upon substantially the same issue and between substantially the same parties may be proved by anyone who

---

[1] OCGA § 16-5-20 (a) (2).

[2] *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).

[3] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hash*, supra.

[4] Compare *Dumas v. State*, 266 Ga. 797, 799 (2) (471 SE2d 508) (1996).

[5] *Stephens v. State*, 279 Ga. 43, 45 (3) (609 SE2d 344) (2005); see *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986) (a defendant cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count).

heard it and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies.

Outside the presence of the jury, the prosecutor sought to have Thrasher's prior testimony read into evidence pursuant to that Code section. Upon the court's questioning of Thrasher, he responded that he was pleading the Fifth Amendment; that he remembered nothing about the incident underlying Hardeman's charges; that he remembered nothing about his own prior testimony; and finally, that even if his transcribed testimony was read to him to refresh his memory, he would still refuse to testify — under any circumstances, including being held in contempt. Thrasher reminded the court that he was already imprisoned.

The court found Thrasher unavailable within the meaning of OCGA § 24-3-10. After reviewing the transcript of Hardeman's probation revocation hearing, the court found that Hardeman's counsel at the probation revocation hearing had an opportunity to question Thrasher thoroughly concerning the events about which he was testifying and that the court had not restricted that questioning. Thus, over defense counsel's objection that admitting Thrasher's prior testimony violated Hardeman's Sixth Amendment right to confront witnesses against him, the court ruled that the testimony was admissible. The court agreed to the prosecutor's suggestion that Crum read Thrasher's answers and the prosecutor read the questions posed on direct examination. Defense counsel, who had also represented Hardeman at his probation revocation hearing, agreed to read the questions that he had posed to Thrasher on cross-examination. The court asked, "Is there anything else?" Defense counsel made no further objection.

The jury returned to the courtroom, and Thrasher's testimony was read into evidence. It revealed that he, Johnson, and Hardeman were standing outside Heard's house. A heated discussion arose between Thrasher and Hardeman. Thrasher walked away and stepped onto a porch. Hardeman fired a bullet that landed under the porch. When Hardeman fired again, Thrasher ran next door into Horton's house. Horton and White were inside. Hardeman followed Thrasher and fired a bullet at him, which went above his head and into a door panel. Thrasher was afraid. When he begged Hardeman not to shoot him, Hardeman left.

(a) Hardeman argues that the trial court erred in determining that Thrasher was unavailable. Where, as here, a witness is present

in the courtroom but refuses to testify, the witness is inaccessible within the meaning of OCGA § 24-3-10.[6]

Hardeman also argues that the admission of Thrasher's prior testimony violated his Sixth Amendment right to confront witnesses against him. Where an inaccessible witness's prior testimony satisfies the requirements of OCGA § 24-3-10, the testimony does not violate the accused's right of confrontation.[7] Thrasher made it clear that he would not testify about the shooting at trial. His sworn testimony at Hardeman's probation revocation hearing concerned substantially the same issue as the trial of this case: whether Hardeman had assaulted him with a gun. Hardeman's probation revocation hearing was between substantially the same parties as was his trial. And Thrasher was subject to cross-examination by Hardeman's trial counsel at the probation revocation hearing. Because Thrasher's prior testimony satisfied OCGA § 24-3-10, it did not violate Hardeman's right of confrontation.[8]

(b) Hardeman also argues that the trial court erred by allowing Crum to read Thrasher's testimony. Pointing out that Crum also testified about his involvement with the case as a law enforcement officer, Hardeman claims that allowing the officer to read Thrasher's testimony improperly inflated Thrasher's credibility. But Hardeman did not object on this ground at trial. "Where an entirely different objection or basis for appeal is argued in the brief which was not presented at trial we will not consider that basis as we are limited to those grounds presented to and ruled upon by the trial court."[9] Moreover, it is highly probable that, given the other evidence of Hardeman's guilt, any error in the admission of Thrasher's testimony did not contribute to the jury's guilty verdicts.[10] Under these circumstances, even if the trial court erred as argued here, the error was harmless.[11]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JANUARY 9, 2006.

---

[6] *Dillingham v. State*, 275 Ga. 665, 667 (2) (571 SE2d 777) (2002).

[7] See id.

[8] See id.

[9] *Morrison v. State*, 256 Ga. App. 23, 25 (2) (567 SE2d 360) (2002) (citation and punctuation omitted).

[10] *Frazier v. State*, 278 Ga. 297, 299 (5) (602 SE2d 588) (2004); *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976).

[11] See *Frazier*, supra; *Johnson*, supra.

*John L. Strauss*, for appellant.
*W. Kendall Wynne, Jr., District Attorney*, for appellee.