## A08A0386. KILGORE v. THE STATE.

(663 SE2d 302)

MIKELL, Judge.

A Cherokee County jury convicted Bobby Dale Kilgore of battery, aggravated assault, criminal damage to property in the second degree, and simple battery. On the aggravated assault charge, Kilgore was sentenced to twenty years, seven to serve and the balance on probation, and on each of the remaining three charges, he was sentenced to twelve months, to run concurrent. On appeal, Kilgore raises three related enumerations of error. First, he contends that the trial court erred when it permitted the state to introduce the testimony of the victim in violation of his right to confrontation. Next, he argues that the trial court should have granted his motion for a directed verdict of acquittal because without the admission of the victim's hearsay testimony, the evidence was insufficient to support his conviction. Finally, Kilgore maintains that trial counsel was ineffective because he failed to object to the introduction of the hearsay evidence. For the reasons stated below, we affirm.

The record shows that the victim, Dana Lynn Gibson, testified at trial but refused to answer questions related to the incidents occurring on June 21, 2000, which gave rise to the four-count indictment upon which Kilgore was tried and convicted. Count 1 of the indictment charged that Kilgore committed battery when he caused substantial visible bodily harm to Gibson by striking her, which harm was demonstrated by bruising on the side of Gibson's face. Count 2 charged that he committed aggravated assault when he struck Gibson with a shower rod. Count 3 charged Kilgore with criminal damage to property in the second degree for unlawfully and intentionally damaging a vehicle owned by Allen Jarrett, Gibson's son, by breaking the car window and denting the exterior of the car. Count 4 charged that Kilgore struck Gibson, committing simple battery.

Deputy Sheriff Dewitt A. Fincher of the Cherokee County Sheriff's Department testified at trial that at 1:35 p.m. on June 21, he responded to a domestic disturbance call at 2208 Holly Springs Parkway, where he met Gibson. Fincher testified that he observed a long scratch on Gibson's forehead and that she told him that she had a bruise on her back. According to Fincher, Gibson also told him that Kilgore blocked her car in so that she could not leave and then jumped out of his truck and started beating on her car. Once Fincher determined that domestic violence was involved, he called detectives from another unit, who arrived within 15 minutes.

Detective William Power testified that he responded to the scene after Fincher determined that detectives should be called to the scene. Upon arriving at the scene, he met with Gibson, who was

crying and was very upset and angry and had scratches on her forehead and a knot on the left side of her head. While talking to Detective Power, Gibson told him about two separate incidents that happened that day. Detective Power testified that Gibson told him that earlier that morning, as she was getting dressed to attend Kilgore's sentencing hearing on another case in which he had been convicted of committing simple battery against her, Kilgore told her that if her children ever testified against him again, he was going to hurt them. Detective Power further testified that Gibson told him that the argument became violent; that she tried to lock herself in the bedroom; and that Kilgore kicked the door in, causing it to strike her; and that Kilgore then hit her with his fist on the left side of her head, which caused the knot on her head, and struck her in the back with a metal shower rod. Gibson ran out of the bedroom and held the door closed. Kilgore hit the door with the shower rod, enlarging the small hole that was already present in the door. Detective Power observed the metal rod and the pieces of the broken door at the house.

Gibson told Detective Power that she returned to the residence after the sentencing and as she was pulling out of the driveway to go to work, Kilgore pulled in, blocking the driveway. Kilgore yelled that he had been given two days to leave the residence and that Gibson had gotten what she wanted, the house. Gibson told Detective Power that she told Kilgore that she would show him what she thought of the house and picked up a piece of wood and threw it at the house, trying to break a window, but Detective Power observed that the window was not broken.

Gibson told Detective Power that Kilgore gave her some papers to read and they continued to exchange words until she got back in her vehicle and started the car, at which point Kilgore hit the car with a large metal pole, breaking the driver's side back window and denting the top of the car. The car stopped and as she tried to start it again, Kilgore went around the car and struck the front passenger side with the same pole, denting it as well, and Gibson could not get the car to start. Gibson told Detective Power that Kilgore then went back into the residence and retrieved a large kitchen knife, which he sharpened while standing on the porch, then used the knife to poke the glass out of the window of the car. Gibson began to curse at Kilgore, telling him to leave her alone, when he reached inside the vehicle, grabbed her hair, and scratched her forehead. She then exited the vehicle from the passenger side and ran over to Kilgore's wrecker and while she was trying to turn it on to leave, Kilgore punctured the tire on the wrecker with the knife. According to Detective Power, Gibson then pushed her vehicle onto the highway in

front of the house and an unknown person stopped and helped her push it down the hill to the Holly Springs Mobile Home Park.

Detective Power also testified that he talked to Kilgore at the scene, who told him that on the previous day, Gibson cut the tire on his wrecker and that she had thrown a brick at him, slapped him, and attempted to throw a phone at him, which actually hit her in the face. Kilgore told Detective Power that when Gibson was trying to leave on June 21, 2000, he threw a baseball bat at the car and then struck the front corner of the car with the bat. Detective Power did not observe any injuries on Kilgore.

Detective Power took pictures of Gibson's injuries, the shower rod, and the large metal pole and baseball bat that Kilgore had used to hit the car. He testified that he took pictures of Gibson's facial injuries and that the photographs, which were admitted into evidence, accurately reflected Gibson's appearance on the day in question. Detective Power also testified that he retrieved the shower rod from the bedroom floor at the house and the large metal pole from a bush against which it was leaning outside.

Detective Kim Grant testified that she accompanied Detective Power to the scene and that she took photographs of the injuries to Gibson's back and of the driveway and other items at the scene, including broken glass on the driveway in front of the house, skid marks on the driveway, and a pole that was found hanging from a tree in the front yard, all of which were admitted into evidence. Grant further testified that the photographs of Gibson's back accurately depicted the way she looked on the day of the incident and that the marks on Gibson's back were clearly visible to Grant's eye when she took the pictures. Grant also identified a knife that was introduced as an exhibit at trial as the knife given to her at the scene by Gibson.

Gibson testified at trial and acknowledged that she and Kilgore had lived together for 11 years prior to the incident involved herein and that she attended his sentencing hearing and heard the court sentence Kilgore to probation and order him to have no further contact with her. She also admitted that she returned to the house to get ready for work. Gibson identified photographs of the house where she and Kilgore lived and of her son's car, but would not answer questions about who damaged the car. When she was asked to explain why she did not make it to work on June 21, she refused to answer counsel's question. Gibson refused to answer any of the state's questions about her confrontations with Kilgore, stating that she did not want to talk about the incidents.

After it became clear that Gibson was not going to answer questions about the June 21 events, despite the trial judge's warning to her (given outside of the presence of the jury) that she could be

found in contempt and jailed, Kilgore's counsel agreed that the state would read Gibson's testimony from the transcript of a prior proceeding in the case. The prior proceeding was Kilgore's probation revocation hearing, but this fact was not revealed to the jury. In reading from the transcript, the state would ask Gibson to admit her earlier testimony, with the effect that the testimony would be published for the jury.[1] Gibson admitted at trial that the transcript reflected her testimony in an earlier proceeding but still refused to answer any questions.

Through reading Gibson's testimony, the state established facts consistent with what Detective Power testified that Gibson had told him at the scene. The state also established additional facts: that after Kilgore insisted that Gibson read papers from the court, she tried to explain that the document did not require him to leave the house, but Kilgore became more upset; and that when Gibson reached into the car to get her cigarettes, Kilgore grabbed the back of her head and punched her in the back. The state showed Gibson pictures of her injuries, which she acknowledged that she was shown at the previous hearing, but at trial, she refused to answer questions about them. Gibson admitted that she talked to detectives at the scene but would not testify about what she told them.

At the probation revocation hearing, defense counsel cross-examined Gibson about the June 21 incidents. At trial, however, when defense counsel asked Gibson questions about the incidents, she refused to answer them. When asked by defense counsel if she would answer any questions about the incidents, Gibson replied that she would not, and defense counsel asked no further questions.

1. In his first enumeration of error, Kilgore argues that the introduction of excerpts of Gibson's testimony from a previous hearing violated his constitutional right to confrontation, as defined in *Crawford v. Washington*.[2]

> In *Crawford v. Washington*, the United States Supreme Court held that the Confrontation Clause precludes the admission of testimonial hearsay in a criminal prosecution

---

[1] Defense counsel agreed that the statements might be admissible as a prior statement but objected on continuing witness grounds to the extent that the state wished to send the transcript out with the jury. The parties and the court agreed that the transcript could not be admitted in violation of the continuing witness rule. The court mentioned that Gibson's stance had rendered her unavailable. Once the parties discussed how the testimony would be admitted into evidence, the court stated that the state would read the transcript and ask Gibson if she recalled making the statements, but did not explicitly express the legal basis for the admissibility of her prior testimony.

[2] 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004).

where the declarant is unavailable to testify and the defendant has not had a prior opportunity for cross-examination.[3]

In *Crawford*, the Supreme Court declined to provide a comprehensive definition of "testimonial," but stated that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[4] Therefore, we agree with Kilgore that the portions of the transcript at issue here can be considered "testimonial." However, we do not agree that *Crawford* renders the testimony in the instant case inadmissible. In *Crawford*, the Court wrote that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands . . . unavailability and a *prior* opportunity for cross-examination."[5] The statement at issue in *Crawford* violated the right to confrontation because it was made during a police interrogation during which the declarant was not subject to cross-examination.[6] We find *Hardeman v. State*[7] instructive in the instant case.

In *Hardeman*, the victim testified at the defendant's probation revocation hearing but refused to testify at trial, pleading the Fifth Amendment, and was thus deemed unavailable by the trial court.[8] We rejected Hardeman's challenge to the trial court's conclusion that the witness was unavailable, finding that "[w]here . . . a witness is present in the courtroom but refuses to testify, the witness is inaccessible within the meaning of OCGA § 24-3-10."[9] OCGA § 24-3-10 provides that

> [t]he testimony of a witness since deceased, disqualified, or inaccessible for any cause which was given under oath on a former trial upon substantially the same issue and between substantially the same parties may be proved by anyone who heard it and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies.

Similarly, here, Gibson's refusal to testify about the incidents

---

[3] (Footnotes omitted.) *Gifford v. State*, 287 Ga. App. 725, 726 (1) (652 SE2d 610) (2007).

[4] *Crawford*, supra at 68 (V) (C). Accord *Turner v. State*, 281 Ga. 647, 651 (3) (b) (641 SE2d 527) (2007) (victim's statements to close friends who were also police officers were nontestimonial).

[5] (Emphasis supplied.) *Crawford*, supra.

[6] Id.

[7] 277 Ga. App. 180 (626 SE2d 138) (2006).

[8] Id. at 183 (2).

[9] (Footnote omitted.) Id. at 183-184 (2) (a).

rendered her unavailable or inaccessible under OCGA § 24-3-10.[10] Therefore, the reasoning and holding in *Hardeman* is applicable here.

> Where an inaccessible witness's prior testimony satisfies the requirements of OCGA § 24-3-10, the testimony does not violate the accused's right of confrontation. [Gibson] made it clear that [she] would not testify about the [incidents] at trial. [Her] sworn testimony at [Kilgore]'s probation revocation hearing concerned substantially the same issue as the trial of this case. . . . [Kilgore]'s probation revocation hearing was between substantially the same parties as was his trial. And [Gibson] was subject to cross-examination by [Kilgore]'s trial counsel at the probation revocation hearing. Because [Gibson]'s prior testimony satisfied OCGA § 24-3-10, it did not violate [Kilgore]'s right of confrontation.[11]

Kilgore attempts to distinguish *Hardeman* from the instant case because Kilgore's trial counsel did not read Gibson's cross-examination from the probation revocation hearing at trial. However, the decision in *Hardeman* was not based upon the defense counsel's decision to read the prior cross-examination into evidence, but upon the fact that the witness was subjected to cross-examination at the hearing,[12] as Gibson was in this case. Therefore, Kilgore's right of confrontation was not violated. We note, too, that although *Crawford*[13] was not mentioned in *Hardeman*, the court there satisfied the *Crawford* requirements.

2. In his next enumerated error, Kilgore argues that absent the introduction of the hearsay statements made by Gibson about the incident, he was entitled to a directed verdict of acquittal on the battery and assault charges. Because Gibson's testimony was admissible as discussed in Division 1, we need not discount it. Gibson's testimony, along with the testimony of the officers and photographic evidence corroborating Gibson's testimony, was sufficient to enable a rational trier of fact to find Kilgore's guilt beyond a reasonable doubt.[14]

---

[10] See generally *Barksdale v. State*, 265 Ga. 9, 12 (1) (b) (453 SE2d 2) (1995) (refusal to testify renders witness unavailable).

[11] (Footnotes omitted.) *Hardeman*, supra at 184 (2) (a).

[12] Id.

[13] Supra.

[14] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Lastly, Kilgore argues that trial counsel was ineffective because he failed to object to the introduction of Gibson's hearsay statements. "Since any objection trial counsel could have made would have been meritless and failure to make a meritless objection cannot be evidence of ineffective assistance,"[15] Kilgore's claim of ineffectiveness fails.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JUNE 16, 2008.

*Lee W. Fitzpatrick*, for appellant.
*Garry T. Moss, District Attorney, Sarah M. Santander, Assistant District Attorney*, for appellee.

---

[15] (Citation omitted.) *Green v. State*, 281 Ga. 322, 323 (2) (638 SE2d 288) (2006). See also *Horner v. State*, 257 Ga. App. 12, 18 (6) (570 SE2d 94) (2002).