314 Ga. 370
FINAL COPY

S22A0675.  HARRIS v. THE STATE.

PETERSON, Presiding Justice.

Juan Keon Harris was convicted of murder and other crimes committed against Tony Morris.[1] On appeal, Harris argues that the trial court should have granted him a continuance to call missing

---

[1] The crimes took place on September 29, 2001. Harris was first indicted by a Fulton County grand jury on January 15, 2002. He was reindicted on May 5, 2006. The 2006 indictment, on which Harris was tried, charged him with malice murder (Count 1), two counts of felony murder, predicated on criminal attempt to commit armed robbery and aggravated assault (Counts 2-3), aggravated assault with a deadly weapon (Count 4), and possession of a firearm during the commission of a felony, predicated on aggravated assault (Count 5). Harris filed a motion to dismiss the indictment on May 9, 2007, claiming that his rights to a speedy trial had been violated. The trial court denied the motion on June 18, 2007. This Court affirmed. See *Harris v. State*, 284 Ga. 455 (667 SE2d 361) (2008). Harris was tried by a jury in December 2008. He was acquitted of felony murder predicated on attempted armed robbery (Count 2), but found guilty of the other charges. The trial court sentenced Harris to life imprisonment on Count 1 and merged Count 4 into it; Count 3 was vacated by operation of law. On Count 5, the court imposed a sentence of five years to be served consecutively.

Harris timely filed a motion for new trial on January 12, 2009. New counsel amended the motion in October 2018 and March 2020. Following a hearing, the trial court denied Harris's motion in a written order dated January 4, 2022. Harris timely filed a notice of appeal to the Court of Appeals, which transferred the case to this Court. The case was docketed to our April 2022 term and submitted for a decision on the briefs.

witnesses and that his trial counsel provided ineffective assistance for several reasons related to witness preparations and for withdrawing requests for jury charges. Harris had not subpoenaed the missing witnesses and did not know where they were, so the trial court did not abuse its discretion in denying the continuance. Harris has failed to show what helpful testimony he would have elicited had his counsel prepared better, and so he cannot show any prejudice. Harris has failed to show that his counsel was deficient in withdrawing requests for jury charges that the trial court reasonably understood would have required that Harris admit the shooting. And Harris has failed to show cumulative prejudice. We affirm.

Tony Morris[2] was shot four times and killed in the early morning hours on September 29, 2001. Using phone records, police identified Harris as someone Morris had spoken to using a phone

---

[2] The biologically male victim identified as a woman and went by "Erica Morgan" at the time of the crimes. According to representations made by a prosecutor to the trial court, the victim's legal name was "Tony Morris," and this is the name used in the indictment.

chat line service the night Morris was killed. Talking with police during a search of his property, Harris, trembling and breathing quickly, denied owning a gun, and uttered, "[I]f I had a gun used to kill someone, I would have done thrown it in the lake." There was a lake across the street from Harris's home. Police found a half-empty box of Magtech 9mm ammunition in Harris's car; Harris claimed that a friend had left it there. Investigators found Magtech 9mm shell casings at Morris's home.

Police later contacted the friend and asked him to call Harris. During that call, the friend asked Harris whether Harris had given his gun to anyone, and Harris indicated that he had not. Questioned again by police, Harris said that he owned a BB gun that he had given to his half-brother, Antravous Favors. Harris denied ever having owned or held a 9mm handgun. But when the questioning officer implied that the police knew more about a firearm than he had previously told Harris, Harris's lip began to quiver, his eyes watered, and he slumped forward, but did not say anything. Favors later told police he had seen Harris with a Hi-Point 9mm handgun,

which a ballistics expert testified could have ejected the casings found in Morris's home.

Favors told the police and, during trial, testified that Harris had confessed to the murder. On direct examination, Favors admitted to a past conviction for armed robbery. Favors said Harris called and said "[h]e had something to tell me." The two met, and Harris admitted that he killed someone (whom he did not name). Harris said he had met this person on a phone chat line service, and the person invited Harris over. The person was wearing women's lingerie when Harris arrived, but Harris noticed that the person had male physical characteristics. Harris asked for the person's phone number, and the person stepped away to get something to write with. When the person returned, Harris pulled out a gun and said "you already know what it is," by which Harris meant that it was a robbery. The person began running at Harris and screaming, so Harris shot the person repeatedly until his gun was empty. Harris told Favors that the person had only a pencil in hand, he shot the person in the chest and stomach, and he threw the gun into a lake

after speaking with the police for the first time. Favors, who was in jail when Morris was killed but had been released before speaking to Harris, did not contact the police and initially denied knowing anything when questioned, testifying that he had wanted to protect Harris.

Before cross-examining Favors, Harris's counsel said, "I didn't think he was testifying until today." He had Favors stand to show the jury that he was wearing a county jail inmate uniform (not, as he had testified on direct examination, a state prison uniform). Favors admitted that his convictions included numerous felonies. Favors testified that he told the police about Harris's confession only after the police said Harris had identified Favors as the person who killed Morris, angering him, but the questioning officer denied telling Favors this. Favors denied telling Harris's previous counsel that Favors had fabricated his story, and denied writing a letter to his grandmother expressing animus toward Harris.

Harris presented alibi evidence from his grandmother and mother. He also sought a self-defense jury instruction. During the

5

jury charge conference, the trial court said it would instruct the jury as to alibi and self-defense. When the trial court indicated that it also intended to give an instruction on affirmative defenses generally, Harris objected, noting that the intended instruction "admits the doing of the act," whereas in his case the issue of self-defense was raised by Favors's testimony, not by any admission on Harris's part. The court responded that Harris could not raise self-defense or justification without an admission, although it did note Harris's ability to argue inconsistent defenses. Over Harris's objection, the trial court stated that it would charge the jury on both self-defense and affirmative defenses, denying Harris's request for an additional charge on inconsistent defenses. Counsel then said that he would "involuntarily withdraw" his request for a charge on self-defense or any other justification charge, because he could not "permit the jury to hear in any shape, manner or fashion that Mr. Harris is admitting that he did anything." When trial resumed the following Monday, the trial court denied Harris's supplemental request for modified versions of these charges. Harris renewed his

6

objections after the trial court's charge, which lacked any instruction on affirmative defenses, self-defense, or justification.

Immediately after the trial court denied his supplemental request, Harris's counsel said that he had been negligent in failing to watch the videotaped interviews of Favors and Julius Martin (a co-defendant of Harris and Favors in an unrelated case); he said the videos would "substantially further any claim of self-defense" and help him impeach Favors. He moved to reopen the evidence, but conceded that Martin was unavailable, and that prosecutors had indicated to him that they would not agree to admission of the videotapes without the proper foundation being laid and Martin being available for questioning. The trial court responded that counsel was "intentionally trying to inject error" and it would "overrule" his "objections."

Harris's closing arguments pointed to alibi evidence and urged the jury to find Favors's testimony not credible. Alternatively, counsel argued that the jury should find Harris guilty of voluntary manslaughter if it believed Favors, but did not argue self-defense.

The jury acquitted Harris of felony murder predicated on attempted armed robbery, but found him guilty of the remaining counts.

1. *There was no error in denying Harris's continuance motion.*

Harris first argues that the trial court erred in not granting the continuance motion that he made on the morning that trial began. Explaining the basis for the motion, Harris's trial counsel represented to the court that he had "been unable to locate a number of material witnesses" or "secure any current address or contact information" for them. He wanted "another week or two to try to find these people," possibly by "serving a subpoena for production of evidence, perhaps on the Georgia Department of Driver Services, to see if they have addresses for any of these individuals." The trial court denied the motion.

"All applications for continuances are addressed to the sound legal discretion of the court[,]" and we review a trial court's denial of a continuance motion for an abuse of discretion. OCGA § 17-8-22; see also *Geiger v. State*, 295 Ga. 648, 651 (3) (763 SE2d 453) (2014). None of the alleged missing witnesses had been subpoenaed by the

defense, and counsel was unable to say where the witnesses were. And there had already been a long delay due to Harris filing a speedy trial motion, and then unsuccessfully appealing its denial. See *Harris v. State*, 284 Ga. 455 (667 SE2d 361) (2008). Accordingly, "we see no abuse of discretion in the denial of a continuance." *Cain v. State*, 277 Ga. 309, 311 (3) (588 SE2d 707) (2003), overruled in part on other grounds by *Dickens v. State*, 280 Ga. 320, 323 (2) (627 SE2d 587) (2006). See also *Dillingham v. State*, 275 Ga. 665, 667 (2) (571 SE2d 777) (2002) (holding no abuse of discretion in denying continuance where "[t]here was no indication made to the trial court that the witness could be located if an additional continuance was granted").

2. *Harris has not shown ineffective assistance of counsel.*

(a) *Harris failed to show any prejudice as to two ineffectiveness claims arising from his trial counsel's witness preparations.*

Harris argues that his trial counsel provided ineffective assistance by not viewing the videos of Martin's and Favors's police interviews and by failing to prepare for Favors's testimony. To

prevail on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced him. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). Deficiency means that "no reasonable lawyer would have done" what trial counsel did, while prejudice means there is a reasonable likelihood that the outcome of the trial would have been different but for the deficient performance. *Wells v. State*, 295 Ga. 161, 164 (2) (a) (758 SE2d 598) (2014). A defendant claiming that his counsel was underprepared must show that more preparation "might have produced [something] that would have made a difference in the outcome of his trial." *Roberts v. State*, 305 Ga. 257, 266 (5) (c) (824 SE2d 326) (2019) (citation and punctuation omitted).

Even assuming deficiency, Harris has failed to establish any prejudice resulting from either of these alleged failures. Regarding the videos, Harris's trial counsel testified at the motion for new trial hearing that he did not know whether reviewing them would have affected his trial strategy. Harris has not explained how his trial

counsel's approach would have been different if counsel had viewed the interviews, and has not explained how that different approach was reasonably likely to lead to a difference in the outcome of the trial. Harris has therefore not shown any prejudice as to his trial counsel's failure to watch the videos, and so he cannot establish ineffective assistance of counsel on this basis.

Turning to Harris's contention that his trial counsel did not adequately prepare for Favors's testimony, Harris has not even suggested what avenues his trial counsel left unexplored in his cross-examination, and Favors did not testify at the hearing on Harris's motion for new trial. At the motion for new trial hearing, trial counsel enumerated ways in which he did prepare to examine Favors. Harris has not shown any prejudice arising from any lack of preparation on counsel's part. Harris's failure to show any prejudice again dooms his claim of ineffective assistance of counsel. See *Porter v. State*, 292 Ga. 292, 295 (3) (c) (736 SE2d 409) (2013) (claim of ineffective assistance of counsel based on counsel's alleged failure to prepare appellant and his alibi witnesses to testify fails where

11

appellant "offered no evidence to show a reasonable probability that more preparation would have changed the outcome at trial").

(b) *Trial counsel did not perform deficiently in withdrawing jury charge requests.*

Harris next challenges his trial counsel's decision to withdraw requests for jury charges on self-defense and justification.[3] Trial counsel did not perform deficiently in this regard. He withdrew the requests after the trial court held that it would charge the jury on both self-defense and affirmative defenses. The trial court relied on pattern jury charges at the time of the trial, which, although we have since clarified the law,[4] stated: "An affirmative defense is a

---

[3] Harris does not challenge the trial court's ruling as to his requests regarding jury charges on self-defense, affirmative defenses, or inconsistent defenses. He challenges only trial counsel's decision to withdraw the requests after the trial court's ruling.

[4] Over a decade after Harris's trial, we made it clear that a criminal defendant need not admit as true for all purposes anything in order to raise an affirmative defense:

> [I]n order to raise an affirmative defense, a criminal defendant need not "admit" anything, in the sense of acknowledging that any facts alleged in the indictment or accusation are true. Rather, in asserting an affirmative defense, a defendant may accept certain facts as true for the sake of argument, and the defendant may do so for the limited purpose of raising the specific affirmative defense at issue. A defendant is entitled to a requested jury instruction regarding an affirmative defense when at least slight

12

defense that admits the doing of the act charged but seeks to justify, excuse, or mitigate it." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2007), § 3.00.00. Harris's principal defense was alibi, which would have been completely undermined by admitting the shooting. Although trial counsel argued in the alternative that the jury could find him guilty of voluntary manslaughter, at the very least, we cannot say that no reasonable lawyer would have made the strategic decision that trial counsel did here in the light of the circumstances, and so he did not render deficient performance. See *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004) (holding

---

    evidence supports the theory of the charge, whether in the State's evidence or evidence presented by the defendant, and regardless of whether the theory of the affirmative defense conflicts with any other theory being advanced by the defendant. It follows that a trial court errs in denying a defendant's request for a jury instruction on an affirmative defense solely on the basis that the defendant did not admit for all purposes the truth of the allegations in the indictment or accusation regarding the allegedly unlawful act.

*McClure v. State*, 306 Ga. 856, 863-864 (1) (834 SE2d 96) (2019). The current pattern jury charge simply reads: "The defendant has raised a defense that even if he committed the act described in the indictment, there are circumstances that (justify) (excuse) (mitigate) it. Once this defense is raised, the state must disprove it beyond a reasonable doubt." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2020), § 3.00.00.

13

no deficient performance where trial counsel's strategy "was reasonable under the circumstances").[5]

(c) *There is no cumulative prejudice from ineffective assistance of counsel here.*

Finally, Harris contends that the cumulative effect of the ineffective assistance provided by his trial counsel amounted to prejudice. See *Bates v. State*, 313 Ga. 57, 69 (3) (867 SE2d 140) (2022) ("It is the prejudice arising from counsel's errors that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum." (citation and punctuation omitted)). But we already concluded that Harris failed to show any prejudice from the assumed deficiencies in the matters challenged above in Division 2 (a).[6] Cumulative prejudice is therefore not a ground for reversing Harris's convictions.

---

[5] We note that a defendant's burden of demonstrating prejudice arising from ineffective assistance of counsel is heavy, whereas a defendant is entitled to a jury charge regarding a defense as long as "slight evidence" supports it. See, e.g., *McClure*, 306 Ga. at 863-864 (1).

[6] Harris's brief also enumerates as error that his trial counsel provided ineffective assistance in not interviewing Jones and not calling Martin as a witness. But these enumerations are "not supported by argument or citation of authority in the brief" and so are abandoned. Supreme Court Rule 22.

14

*Judgment affirmed. All the Justices concur.*

Decided August 9, 2022.

Murder. Fulton Superior Court. Before Judge Glanville.

*Stanley W. Schoolcraft III*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Elizabeth Rosenwasser, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.