A99A1813. TILLMAN v. THE STATE.
(522 SE2d 557)

JOHNSON, Chief Judge.

Shannon Tillman appeals from his armed robbery conviction. He claims the court erred in determining that his reasons for striking three members of the jury pool were not race-neutral and in admitting his statement to police into evidence. The claims are without merit, and we therefore affirm Tillman's conviction.

1. A defendant may not engage in purposeful discrimination on the basis of race in the use of peremptory challenges. *Wilburn v. State*, 230 Ga. App. 619, 622 (2) (497 SE2d 380) (1998). When the state claims a defendant used peremptory challenges in a racially discriminatory manner, the trial court must engage in a three-step process. Id. The state must first make a prima facie showing of racial discrimination; the defendant next has the burden of giving race-neutral reasons for the strikes; and the trial court then must decide whether the state has proven discriminatory intent. Id.

In the instant case, the trial court correctly employed the three-part analysis. The state first made out a prima facie case of racial discrimination by showing that Tillman, who is African-American,

struck a total of 14 jurors, all of whom are white. "[T]his overwhelming use of peremptory strikes to exclude jurors of one race establishes a prima facie showing of discrimination." (Citation and punctuation omitted.) *McKenzie v. State*, 227 Ga. App. 778, 780 (2) (490 SE2d 522) (1997).

Tillman next explained the reasons for his strikes. As for the three jurors in question, Tillman said he struck two of them because they know a sheriff's investigator who ultimately testified in the case and he struck the other juror because her son-in-law is a correctional officer and she had been a crime victim. Because no discriminatory intent is inherent in Tillman's explanations, those explanations were facially race-neutral. See *McKenzie*, supra at 778-779.

The state responded that Tillman had not struck African-American jurors who also know the investigator, who have law enforcement officers in their families or who have been crime victims. The court concluded that the state had met its burden of proving Tillman's discriminatory intent as to three jurors.

Because the trial court correctly utilized the three-part test, our only duty is to review the court's conclusion. *Joseph v. State*, 231 Ga. App. 399, 402 (1) (498 SE2d 808) (1998). We are required to review the trial court's findings with great deference, and we cannot disturb the findings unless they are clearly erroneous. *Wilburn*, supra.

Based on the record before us, we cannot find that the court's conclusion is clearly erroneous. In determining whether a defendant's facially race-neutral explanations for his use of peremptory strikes are pretexts for purposeful discrimination, the trial court may consider whether similarly situated members of another race were seated on the jury. *McKenzie*, supra at 779 (1). Because there is some indication in the record that Tillman did not strike African-American jurors who were situated similarly to the white jurors he struck, we must defer to the trial court's judgment and uphold its finding of purposeful discrimination. See *Blair v. State*, 267 Ga. 166, 167 (2) (476 SE2d 263) (1996); *Russell v. State*, 230 Ga. App. 546, 548-549 (2) (497 SE2d 36) (1998).

2. Contrary to Tillman's claim, the court did not improperly admit into evidence a statement he made to police after invoking his right to counsel. The uncontradicted evidence shows that after Tillman was arrested he was taken to a police station where a Georgia Bureau of Investigation agent wanted to interview him. Before the GBI agent spoke with him, Tillman asked a police detective if he could have a lawyer present during the questioning. The detective told Tillman that he could have a lawyer and that he did not have to talk with the agent, but that if he did want to talk at that time he could not wait for an attorney to arrive because he was about to be transferred to another county. Tillman then agreed to talk with the

agent without an attorney present.

The detective told the GBI agent about his conversation with Tillman. So the agent, before questioning Tillman, reiterated to him that he had the right to an attorney and that he had the right not to talk with the agent. The agent fully informed Tillman of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). Tillman again said that he wanted to talk with the agent without an attorney and signed a form waiving all his *Miranda* rights, including his right to a lawyer. Tillman then made his statement to the agent.

The police may not interrogate a suspect who is in custody and who has requested an attorney unless counsel is made available to the suspect or the suspect initiates further communication with the police. *Haynes v. State*, 269 Ga. 181, 183 (4) (496 SE2d 721) (1998). In the instant case, even if we assume that Tillman's question to the detective about an attorney was an unequivocal assertion of his right to have a lawyer present during any police questioning, Tillman thereafter initiated further communication with the police by indicating to both the detective and the GBI agent that he wanted to speak with the agent at that time without waiting for a lawyer. See *Ottis v. State*, 269 Ga. 151, 153-154 (2) (496 SE2d 264) (1998); *Tatum v. State*, 203 Ga. App. 892 (1) (418 SE2d 152) (1992). Because Tillman freely and knowingly waived his right to an attorney, the court's admission of his subsequent statement into evidence was not clearly erroneous and must be affirmed. *Underwood v. State*, 218 Ga. App. 530, 533-534 (2) (462 SE2d 434) (1995).

*Judgment affirmed. McMurray, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 15, 1999.

*Kathy S. Palmer*, for appellant.
*Richard A. Malone, District Attorney*, for appellee.
*James C. Bonner*, amicus curiae.