### A09A0684. BRADLEY v. THE STATE.

(680 SE2d 489)

DOYLE, Judge.

After a bench trial at which Lawrence James Bradley proceeded pro se, the Bibb County Superior Court adjudicated Bradley guilty of criminal trespass[1] as a lesser included offense of criminal damage to property,[2] battery,[3] obstruction of an officer,[4] terroristic threats,[5] and interference with government property.[6] On appeal, Bradley argues that the trial court erred by allowing him to proceed pro se and by not informing him of his right to refrain from testifying, and he also challenges the sufficiency of the evidence. Finding no error, we affirm.

1. Bradley argues that the trial court erred by finding that he had validly waived his right to counsel because the court did not properly inform him of the possible sentences he faced, of any lesser included charges, or of any possible defenses he may have had.

"In any prosecution that may result in imprisonment, the U. S. Constitution guarantees an accused the right to counsel. Although this right to counsel may be waived, such waiver must be made

---

[1] OCGA § 16-7-21 (a).
[2] OCGA § 16-7-23 (a) (1).
[3] OCGA § 16-5-23.1 (a).
[4] OCGA § 16-10-24 (a).
[5] OCGA § 16-11-37 (a).
[6] OCGA § 16-7-24 (a).

knowingly, intelligently, and voluntarily.'"[7]

> The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . [T]he trial judge has the responsibility of determining whether the accused has intelligently waived his right to counsel. The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.[8]

In order to determine whether a defendant has validly waived his right to an attorney, this Court generally inquires into whether the trial court has advised

> the defendant of (1) the nature of the charges against him, (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter.[9]

Nevertheless, our Supreme Court recently explained that "it is not incumbent upon the trial court to address each of the six points with the defendant. Rather, the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver."[10] Moreover, it is not "required that the trial court probe the defendant's case and advise the defendant as to legal strategies to ensure that a waiver is intelligently made."[11]

The record clearly shows that Bradley knowingly and intelligently waived his right to counsel. Prior to trial, the court counseled Bradley about the dangers of representing himself at trial, explaining to Bradley that he would be responsible for following all

---

[7] (Citation omitted.) *Humphries v. State*, 255 Ga. App. 349, 350 (1) (565 SE2d 558) (2002) (citing *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975)).

[8] (Punctuation omitted.) *Bollinger v. State*, 272 Ga. App. 688, 689 (1) (613 SE2d 209) (2005).

[9] (Citation omitted.) *State v. Evans*, 285 Ga. 67, 68 (673 SE2d 243) (2009).

[10] (Citations and punctuation omitted.) Id.

[11] Id. at 69.

procedural rules and that he may miss valuable defenses in addition to an independent perspective of the case. When Bradley explained that he wanted to represent himself because "nobody [knew] the case better than [he] because [he] was the one that was there," the trial court responded that attorneys have to "deal with more than the evidence" when conducting a trial, and that Bradley's awareness of the events did not equate to awareness of the legal ramifications of motions or objections during trial. Additionally, the trial court cautioned Bradley that he would have a harder time working out a more favorable sentence if he was found guilty, and the State was represented by a seasoned prosecutor who would not treat him any differently than a practicing attorney.

The trial court asked Bradley if he had received a copy of the indictment and if he understood the charges and penalties he faced. Bradley explained to the court that he understood he was facing imprisonment of one to five years for the felony charges and imprisonment of up to twelve months for the misdemeanor charge. However, the State interjected that at least two of the charges carried possible sentences of up to ten years. Bradley's court-appointed attorney, who was present during the court's colloquy, told the court that he believed the charges carried maximum sentences of only five years.

The trial court moved on in its questioning, and Bradley explained that he had represented himself previously, and he wished to do so in the case at bar. The trial court explained that Bradley's appointed attorney was a very good lawyer and that Bradley was "making a big mistake" by representing himself, but Bradley stated that he still wished to proceed pro se. Immediately before trial, the trial court again asked Bradley if he wanted to represent himself, and he replied affirmatively.

Although the discrepancies regarding the potential sentences Bradley faced for the felony charges was not addressed further in the record, it does not follow that Bradley did not knowingly and intelligently waive his right to counsel, especially in light of the fact that Bradley, and not the State, correctly understood the potential sentences he faced (five years, not ten) for the felonies.[12] Moreover, although the trial court did not explain to Bradley that he could be found guilty of criminal trespass if the State failed to show that the damage he caused to the property was less than $500, the trial court was not required to address each of the six prongs of the test. Viewing the colloquy as a whole, we affirm the court's finding that

---

[12] See OCGA §§ 16-7-24 (a); 16-10-24 (b); 16-11-37 (c).

Bradley's waiver of counsel was knowing, voluntary, and intelligent.[13]

2. Next, Bradley argues that his privilege against self-incrimination was violated because the trial court did not apprise him of his right not to testify.

Pretermitting whether the trial court was required to advise him that he was not obligated to testify, the record contradicts Bradley's assertion that the trial court failed to do so. Prior to Bradley's opening statement, the trial court stated, "This is your chance to make an opening statement to me as to what you think the evidence will be. You have the right to remain silent. You have the right to give up that and to testify if you decide to." Accordingly, Bradley can show no error.

3. Finally, Bradley argues that the evidence presented at the bench trial was insufficient to support the guilty verdicts. We disagree.

Viewed in a light most favorable to support the trial judge's verdict,[14] the evidence shows that on July 9, 2007, Bradley had been dating Victoria Hill for about two months, when they had an argument about him driving his semi-trailer truck into her neighborhood. That evening, Bradley began drinking and repeatedly called Hill, alternatively demanding that she come pick him up or threatening to come to her house to retrieve his things. In response to one of his calls, Hill told Bradley that she would put his things on the curb, but not to come into her house, and she called the police and asked for a patrol to be sent to her neighborhood. Eventually, Bradley arrived at Hill's home in his truck, running over her mailbox in the process, and he made his way to her back door, where he demanded entry and kicked in some of the glass panes in the door. Hill contacted emergency services again to update them on the situation, and she exited her home in an effort to get Bradley away from her house where her children were sleeping. After retrieving Bradley's possessions from the curb and placing them in the cab of his truck, Hill again asked him to leave, but Bradley insisted that she get in the truck. She refused, and he got into the truck, revved the engine, and drove toward her, as if he intended to hit her. Bradley then exited the truck, ran after Hill, and assaulted her, smashing her head into the trunk of her car, choking her, and kicking her in her stomach and legs.

---

[13] See *Evans*, 285 Ga. at 69 (holding that the defendant knowingly and intelligently waived his right to counsel even though the trial court did not discuss with him any lesser included offense, the element of intent, or that he could be convicted as a party to a crime).

[14] See *Annaswamy v. State*, 284 Ga. App. 6, 8-10 (3) (642 SE2d 917) (2007); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Bradley stopped the assault when Officer Roy Williams arrived on the scene; Williams found Hill on the ground curled in the fetal position and screaming with Bradley standing over her. Officer Williams told Bradley he was arresting him and placed him in handcuffs, and, with the aid of another officer, Williams tried to put Bradley into the back of his patrol car behind the driver's seat. At that point, Bradley head-butted Officer Williams in the face. Bradley then began yelling death threats at Officer Williams, which Hill overheard. Leaving Bradley in the patrol car, Officer Williams returned to Hill in order to assess the damage to her property, at which point both individuals heard a noise and discovered Bradley head-butting the window of his patrol car. Hill explained that she spent about $250 replacing the mailbox and door that Bradley had destroyed.

Based on the foregoing, the evidence was sufficient to support the judge's verdicts as to each count.[15] To the extent that Bradley argues that inconsistent testimony was given by the victim and the officers or that the testimony should not be credited, "it was for the trial court, sitting as the trier of fact, to assess [the witnesses'] credibility, to resolve any conflicts in the evidence, and to determine the facts."[16]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JUNE 16, 2009.

*Tera E. Edwards*, for appellant.
*Howard Z. Simms, District Attorney, Elizabeth K. Bobbitt, Assistant District Attorney*, for appellee.

---

[15] See *Smith v. State*, 294 Ga. App. 579, 580-581 (1) (669 SE2d 530) (2008) (obstruction of an officer); *Mack v. State*, 294 Ga. App. 518, 519 (669 SE2d 487) (2008) (battery); *Burrell v. State*, 293 Ga. App. 540, 542-543 (2) (667 SE2d 394) (2008) (criminal trespass); *Gartrell v. State*, 291 Ga. App. 21, 22 (1) (660 SE2d 886) (2008) (interference with government property); *Mayfield v. State*, 276 Ga. App. 544, 544-545 (1) (623 SE2d 725) (2005) (terroristic threats).

[16] (Citations omitted.) *Williams v. State*, 297 Ga. App. 723 (1) (678 SE2d 95) (2009).