A10A0633. DAVIS v. THE STATE.
(696 SE2d 381)

BERNES, Judge.

Steven Andrew Davis was arrested for firing a handgun at a street light at a hotel, and a deputy found cocaine in his pocket

during the booking process at the county detention center. Davis was indicted and tried on several charges relating to the handgun incident and the cocaine. He represented himself at the pre-trial hearings and through most of his jury trial, but ultimately requested and was permitted by the trial court to have standby defense counsel represent him. Following the trial, the jury convicted Davis solely of possession of cocaine.[1] On appeal from his conviction, Davis contends that the trial court erred by denying his motion to suppress; by allowing Davis to represent himself at trial and initially stating that his decision to do so would be irrevocable; by requiring Davis to complete the cross-examination of a state's witness before allowing standby defense counsel to take over Davis's representation; by admitting the alleged hearsay testimony of a police officer to explain the officer's conduct; by limiting Davis's cross-examination of a police officer; and by failing to charge the jury on equal access. Davis also challenges the sufficiency of the evidence. For the following reasons, we affirm.

1. Davis argues that the trial court should have granted his motion to suppress because (a) there was no probable cause for his arrest and (b) the search of his hotel room exceeded the scope of the search warrant.

> On appeal from a trial court's denial of a motion to suppress, the evidence is construed most favorably to uphold the court's findings and judgment. If there is any evidence to support the trial court's findings on disputed facts and credibility, they will not be disturbed unless clearly erroneous. When reviewing a trial court's ruling on a motion to suppress, we may consider trial testimony in addition to the testimony submitted during the motion to suppress hearing.

(Citations and punctuation omitted.) *Postell v. State*, 279 Ga. App. 275, 276 (1) (630 SE2d 867) (2006).

Construed in favor of the trial court's ruling, the evidence showed that after midnight on June 18, 2007, officers with the Cobb County Police Department were dispatched to a local hotel in response to a report that "three gentlemen had . . . been drinking and then shot

---

[1] Davis also was indicted on charges of possession of a firearm during the commission of a crime, possession of a firearm by a convicted felon, reckless conduct, criminal trespass, and public drunkenness. The jury acquitted Davis of possession of a firearm during the commission of a crime. The trial court entered a directed verdict of acquittal on the charge of public drunkenness, and the state requested and obtained entry of a nolle prosequi on the charges of possession of a firearm by a convicted felon, reckless conduct, and criminal trespass.

guns in the air at a street light." One of the officers spoke to a female witness who confirmed that she had seen three men shooting at a street light at the hotel a short distance from her. The witness stated that one of the shooters, a white male, later ran into a hotel room carrying a handgun. According to the witness, the shooter had been "wearing a multicolored bandana, camouflage shorts, a ball cap, and also had a tattoo on [his] ankle that stated[,] 'No Fear.' "

The officer communicated the description of the white male shooter to the other responding officers on the scene. Shortly thereafter, officers observed Davis, who matched the description given by the witness, exit from one of the hotel rooms. Davis was apprehended and placed under arrest for discharging a firearm on hotel property without first obtaining permission from the hotel owner or lessee in violation of OCGA § 16-11-104 (a).[2]

Following his arrest, Davis was transported to the county detention center, where a sheriff's deputy searched him as part of the booking process. During the search, the deputy pulled suspected cocaine out of Davis's right front pocket. The deputy handed the suspected cocaine to an officer who had been involved in the arrest and had transported Davis to the detention center. The arresting officer took the suspected cocaine back to the police station, bagged and sealed it, and placed it in a locked evidence locker. The evidence subsequently was taken to the state crime lab, where chemical testing confirmed that it was cocaine.

Officers also applied for and obtained a warrant to search Davis's hotel room for the handgun described by the witness to the shooting incident. While conducting the search, officers found a .38 caliber firearm consistent with the witness's description and a candy tin containing suspected cocaine. The suspected cocaine in the tin was bagged as evidence but ultimately was not tested by the state crime lab or relied upon by the state to support the possession of cocaine charge against Davis.

(a) Davis maintains that his arrest was illegal because the officers lacked probable cause to believe that he had committed a crime and that, as a result, the cocaine seized from his person and the hotel room should have been suppressed as fruit of the poisonous tree. We disagree.

> [A]n arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the

---

[2] OCGA § 16-11-104 (a) provides in part:
   It shall be unlawful for any person to fire or discharge a firearm on the property of another person, firm, or corporation without having first obtained permission from the owner or lessee of the property. . . .

knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense.

*Durden v. State*, 250 Ga. 325, 326 (1) (297 SE2d 237) (1982). Probable cause can be based upon the collective knowledge of multiple police officers "when there is some degree of communication between them." *Harper v. State*, 300 Ga. App. 757, 761 (1) (a), n. 7 (686 SE2d 375) (2009).

Davis matched the unique description of one of the shooters provided by the eyewitness and communicated to the responding officers. Furthermore, he was encountered by the officers near the scene of the shooting incident shortly after its occurrence. These combined facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that Davis had committed the offense of discharging a firearm on the property of another without permission. See OCGA § 16-11-104 (a). The trial court's finding that there was probable cause for Davis's arrest was not clearly erroneous. See *Phillips v. State*, 233 Ga. 800, 801-802 (213 SE2d 664) (1975) (detective who had investigated robbery and interviewed victim had probable cause to arrest four men who matched the victim's description of the robbers); *Self v. State*, 245 Ga. App. 270, 273-274 (3) (b) (537 SE2d 723) (2000) (probable cause existed to arrest defendant and his two accomplices based upon descriptions of robbers and their vehicle given by victims and fact that police encountered the men near the scene of the crime). See also *State v. McBride*, 261 Ga. 60, 62 (2) (a) (401 SE2d 484) (1991); *Dixon v. State*, 273 Ga. App. 740, 742 (2) (615 SE2d 838) (2005); *Hamilton v. State*, 162 Ga. App. 116, 117 (2) (290 SE2d 478) (1982).

(b) Davis also maintains that the candy tin and the suspected cocaine found therein should have been suppressed because the search of the tin fell outside the scope of the search warrant. But Davis affirmatively stated that he had no objection when the state tendered the candy tin and its contents into evidence at trial.[3] He therefore waived his claim of illegal search. See *Monroe v. State*, 272

---

[3] Confusingly, the candy tin was introduced into evidence as part of the same exhibit containing the cocaine seized from Davis's person. The officer who maintained custody of the candy tin, however, clarified that he did not send the tin or the substance in it to the state crime lab for testing. Moreover, in closing argument, the prosecutor made clear that the possession of cocaine charge was predicated solely upon the cocaine seized from Davis's person during the booking procedure that had been tested by the state crime lab. Davis did not challenge the relevancy of the candy tin and its contents to the trial proceedings. Indeed, the candy tin and its contents were not referenced by the prosecutor until his redirect examination of the arresting officer, after Davis had first raised and explored the issue of the candy tin during the officer's cross-examination.

Ga. 201, 204 (6) (528 SE2d 504) (2000); *Carreno v. State*, 272 Ga. App. 229, 230 (1) (a) (612 SE2d 62) (2005); *Dyer v. State*, 233 Ga. App. 770, 771-772 (505 SE2d 71) (1998).

2. Davis argues that the trial court committed reversible error (a) by allowing him to represent himself at trial without first ensuring that he knowingly, voluntarily, and intelligently waived his right to counsel and (b) by initially stating that once he made the decision to represent himself, he could not change his mind mid-trial. We are unpersuaded.

(a) The trial court properly allowed Davis to waive his right to counsel and represent himself at trial.

> Although a criminal defendant has a Sixth Amendment right to assistance of counsel at trial, the defendant also has the constitutional right to represent himself, as long as he voluntarily, knowingly, and intelligently elects to waive the right to counsel. To establish a valid waiver, the trial court must apprise the defendant of the dangers and disadvantages inherent in representing himself so that the record will show that he knows what he is doing and his choice is made with eyes open. In this regard, . . . the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver.

(Punctuation and footnotes omitted.) *Davis v. State*, 301 Ga. App. 484, 488 (4) (687 SE2d 854) (2009). See *Faretta v. California*, 422 U. S. 806, 807, 835 (V) (95 SC 2525, 45 LE2d 562) (1975); *State v. Evans*, 285 Ga. 67, 68-69 (673 SE2d 243) (2009); *Wayne v. State*, 269 Ga. 36, 38 (2) (495 SE2d 34) (1998).

During the course of proceedings in this case, Davis was appointed two different attorneys to assist in his defense. Davis's first attorney filed motions and appeared at a preliminary hearing on his behalf, but ultimately moved to withdraw from representing Davis due to "personality, strategy and ethical conflicts" between them and after Davis expressed his desire to terminate their attorney-client relationship. The trial court granted the motion to withdraw. Davis then filed a pro se motion in which he asserted that he was "familiar with Georgia Criminal Trial Practice," requested that he be permitted to represent himself, and requested that the trial court appoint a new attorney to assist him. Davis thereafter was allowed to represent himself at several pre-trial suppression hearings with stand-by counsel appointed to assist him if necessary. Davis also filed multiple pro se motions and supporting briefs, including a successful motion to recuse the trial judge originally assigned to the case.

On the day of trial, Davis appeared with his appointed standby counsel and again requested that he be allowed to represent himself. After discussing the indictment and possible statutory penalties, the newly assigned trial judge informed Davis that he had a right to self-representation, but strongly discouraged Davis from representing himself at trial:

> [Y]ou know, a lawyer who represents himself has a fool for a client. You need the distance that is required when you have a lawyer. A lawyer puts that distance. A lawyer knows what a jury wants to hear and what a jury doesn't want to hear. You can't help but be emotionally involved. You have an absolute right to represent yourself. But I have an absolute right to tell you that this is always a dangerous thing to do. But you may do it, if you wish to do it.

The trial court further cautioned that there might be mitigating circumstances, possible defenses, or lesser included offenses that could come into play in this case, which were issues that Davis should think about before deciding on self-representation. Davis responded that he still wanted to represent himself. The trial court thereafter recessed the proceedings for the day.

When the proceedings reconvened, the trial judge reiterated that she had only recently been assigned to the case and wanted to make sure that Davis understood the implications of representing himself before the trial commenced. The trial court then went through a lengthy colloquy with Davis concerning the dangers and disadvantages of self-representation. During the colloquy, the trial court emphasized to Davis that he had been given "a tremendous amount of latitude on motion hearings," but that "[t]his [was] a jury trial" and he would be required "to follow all the technical rules of substantive law, criminal procedure and evidence," the same as practicing attorneys. The trial court further explained that Davis might miss valuable defenses due to his lack of knowledge and might unwittingly prejudice himself in front of the jury. Additionally, the trial court emphasized that Davis, as a pro se litigant, would not be entitled to receive any special assistance or advice from the court, and would not be treated any differently than a practicing attorney by the prosecutor.

The trial court asked Davis if he understood that if he could not afford an attorney, one would be appointed to represent him, and Davis responded in the affirmative. Davis also responded affirmatively when the trial court asked if he had read the indictment and understood the charges brought against him. The trial court subsequently asked Davis if he still wanted to represent himself, and Davis

again stated that he wanted to do so. The trial court then permitted Davis to represent himself, with his appointed counsel assisting him as standby counsel.

It is clear from this record that the trial court cautioned Davis at great length about the dangers of self-representation and that Davis nevertheless insisted upon representing himself. The trial court — through its two colloquies on two separate days prior to the commencement of trial — established that Davis made a knowing, voluntary, and intelligent waiver of his right to counsel. See *Wilkerson v. State*, 286 Ga. 201, 203 (2) (a) (686 SE2d 648) (2009); *Hill v. State*, 298 Ga. App. 677, 681-682 (3) (680 SE2d 702) (2009); *Bradley v. State*, 298 Ga. App. 384, 384-387 (1) (680 SE2d 489) (2009); *Shavers v. State*, 179 Ga. App. 45, 46 (1) (345 SE2d 134) (1986).

Citing to *Evans v. State*, 288 Ga. App. 304, 306-309 (1) (653 SE2d 503) (2007), Davis contends that his waiver of his right to counsel was ineffective because the trial court did not address every one of the six points referenced in that case.[4] But our Supreme Court recently reversed *Evans* and emphasized "that it is not incumbent upon the trial court to address each of the six points with the defendant" or otherwise "probe the defendant's case and advise the defendant as to legal strategies to ensure that a waiver is intelligently made." *Evans*, 285 Ga. at 68-69. See also *Wayne*, 269 Ga. at 38 (2). "Rather, the record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver," as the record does in the present case. (Citation and punctuation omitted.) *Evans*, 285 Ga. at 68.

Davis further contends that his waiver of his right to counsel was not knowingly and intelligently made because the trial court omitted one of the misdemeanor charges when discussing the indictment during her initial colloquy with Davis, and because the trial court did not discuss with him the factual allegations underlying the possession of cocaine charge.[5] Davis, however, answered in the affirmative when the trial court later asked him if he had read

---

[4] Those six points are:
(1) the nature of the charges against [the defendant], (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter.
(Citation omitted.) *Evans*, 288 Ga. App. at 307 (1).

[5] While Davis claims that the trial court erroneously stated that the *minimum* sentence for possession of cocaine was 15 years, the record reflects that the court corrected itself and stated that 15 years was the *maximum* sentence. See OCGA § 16-13-30 (c) (defendant convicted of first offense of possession of controlled substance under subsection (a) "shall be punished by imprisonment for not less that two years nor more than 15 years").

the indictment and understood the charges against him. As such, any contention that Davis was confused about the nature of the charges against him when he decided to represent himself is belied by the record.

(b) Davis is correct that the trial court erred by initially stating, during the course of the lengthy colloquy over self-representation, that once he chose to represent himself, he could not change his mind mid-trial. See *Wilkerson*, 286 Ga. at 204 (2) (b) ("The right to counsel[ ] . . . does not evaporate following a valid waiver, and a defendant may make a post-waiver request for counsel if, for example, he discovers he is overwhelmed by the trial process."). But "harm as well as error must be shown to warrant reversal." *Christensen v. State*, 245 Ga. App. 165, 166 (1) (a) (537 SE2d 446) (2000). No harm resulted from the trial court's initial misstatement because during the trial, Davis did in fact change his mind and request counsel, and the trial court granted the request, as discussed infra in Division 3. The trial court's initial misstatement thus does not require the reversal of Davis's conviction. See generally *Reviere v. State*, 231 Ga. App. 329, 331 (1) (498 SE2d 332) (1998) (even if trial court erred in its dialogue with the defendant regarding his decision to represent himself, the error was harmless).

3. During his cross-examination of the arresting officer, Davis stated that he no longer wanted to represent himself and requested counsel. The trial court ruled that Davis would have to complete the cross-examination of the officer, but that standby defense counsel then could take over the examination of witnesses. Davis argues that the trial court erred by not allowing his standby counsel to take over the cross-examination of the arresting officer. We do not agree.

"Whether to grant or deny a defendant's post-waiver request for counsel is within the broad discretion of the trial court," and the court "may consider, among other things, the timing of the request." *Wilkerson*, 286 Ga. at 204 (2) (b). We have held in this respect that a trial court may "require that examination and cross-examination of witnesses be conducted by only one counsel[.]" *Gould v. State*, 168 Ga. App. 605, 607 (2) (309 SE2d 888) (1983). See *Johnson v. State*, 246 Ga. 126, 127 (III) (269 SE2d 18) (1980). Accordingly, because Davis had already begun to cross-examine the arresting officer, the trial court acted within its discretion in not allowing Davis to change counsel mid-examination. See id.

4. On direct examination by the state, the arresting officer

---

Additionally, contrary to Davis's assertion, the trial court adequately explained to him that he would be tried separately in a bifurcated proceeding on the possession of a firearm by a convicted felon charge. In any event, Davis ultimately was not tried on that charge because it was nolle prossed.

testified, over objection, that the female witness to the shooting incident "provid[ed] a description of a person of interest," and that as a result of that description, Davis was identified and taken into custody. Davis argues that the officer's testimony contained inadmissible hearsay and was erroneously admitted by the trial court to explain the officer's conduct. Pretermitting whether the officer's testimony contained inadmissible hearsay,[6] we conclude that admission of the testimony was harmless. The alleged hearsay pertained to the shooting incident, but all of the charges relating to that incident either were dismissed or resulted in an acquittal. Under these circumstances, it is highly probable that the admission of the testimony did not contribute to the verdict. See *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982).

5. Davis argues that the trial court improperly restricted his cross-examination of the arresting officer. "Although the appellant is entitled to a thorough and sifting cross-examination of a witness, the scope of such cross-examination is within the sound discretion of the trial court." *White v. State*, 253 Ga. 106, 110 (4) (317 SE2d 196) (1984). The record reflects that the trial court prevented Davis from asking the arresting officer questions aimed at eliciting hearsay testimony about what others told the officer at the scene of the shooting incident. The trial court also cut off Davis as he attempted to ask a question about the drug "counts" and then clarified to the jury that the indictment only contained one count of possession of cocaine. A trial court does not abuse its discretion in preventing questions aimed at eliciting hearsay or questions that could confuse or mislead the jury. See *Schwindler v. State*, 254 Ga. App. 579, 586 (7) (563 SE2d 154) (2002); *Muse v. State*, 160 Ga. App. 272, 273 (1) (287 SE2d 224) (1981); *Cameron v. State*, 66 Ga. App. 414, 416 (2) (18 SE2d 16) (1941). Thus, the trial court acted within its discretion in restricting Davis's cross-examination.

6. Davis argues that the trial court erred by refusing to grant his request to charge the jury on equal access. Again, we disagree.

> [Because] [t]he purpose of an equal access charge is to rebut the permissive presumption of exclusive possession of

---

[6] See, e.g., *Henley v. State*, 285 Ga. 500, 507 (5) (678 SE2d 884) (2009) (officer's testimony that "[u]sing information gained by the police, he obtained telephone records and subscriber information to identify potential suspects" did not constitute inadmissible hearsay because the officer "did not relay information told to him by other persons"); *Benham v. State*, 259 Ga. 249, 250 (3) (379 SE2d 506) (1989) (admission of officer's testimony that he "had received information from a 'concerned citizen' " and relayed it to a second officer who later arrested the defendant was not erroneous, since "[t]he substance of the information was not disclosed to the jury," and the second officer did not rely solely upon the information as a basis for making the arrest).

> contraband by the owner[,] . . . such charge is appropriate
> to counter a jury instruction on presumption of possession,
> and is not necessary otherwise.

(Punctuation and footnotes omitted.) *Lipsey v. State*, 287 Ga. App. 835, 837-838 (2) (652 SE2d 870) (2007). "A trial court may refuse a requested charge that is not adequately adjusted or tailored to the facts of the case." *Lucas v. State*, 295 Ga. App. 831, 833 (3) (673 SE2d 309) (2009).

The trial court did not err in refusing to charge on equal access because such a charge was not tailored to the facts. The state did not rely on a presumption of ownership to prove that Davis possessed the cocaine. Rather, the state presented evidence that the cocaine was removed from Davis's pocket during the booking procedure at the detention center, and, therefore, that Davis had actual possession of the drugs. Given that the state did not rely on the presumption of ownership but rather on evidence that Davis had actual possession of the contraband, an equal access charge was not appropriate. See *Lipsey*, 287 Ga. App. at 837-838 (2); *Bowen v. State*, 203 Ga. App. 371, 371-372 (1) (417 SE2d 18) (1992); *Eddy v. State*, 194 Ga. App. 576, 577 (2) (391 SE2d 37) (1990).

7. Lastly, Davis argues that there was insufficient evidence to convict him of possession of cocaine. The testimony of the sheriff's deputy and the arresting officer that the cocaine was found on Davis's person, combined with the expert testimony of the state crime lab technician confirming that the seized substance was cocaine, was sufficient to permit a rational jury to find Davis guilty beyond a reasonable doubt of possession of cocaine. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See OCGA § 16-13-30 (a) (possession of cocaine); *Walker v. State*, 294 Ga. App. 239, 240 (1) (668 SE2d 857) (2008); *Marshall v. State*, 286 Ga. App. 86, 88 (1) (648 SE2d 674) (2007).

*Judgment affirmed. Barnes, P. J., and Blackburn, J., concur.*

DECIDED JUNE 8, 2010.

*Gary W. Jones*, for appellant.
*Patrick H. Head, District Attorney, Dana J. Norman, Assistant District Attorney*, for appellee.