## A10A1960. BROWN v. THE STATE.
### (706 SE2d 170)

MIKELL, Judge.

Ryan Jerel Brown appeals from the order denying his motion for new trial following his conviction of armed robbery, aggravated assault, and possession of a weapon during the commission of a crime. Brown contends that the trial court erred by seating two jurors whom he had peremptorily struck, by denying his motions to suppress, by giving insufficient curative instructions when the prosecutor made improper comments during closing argument, and by denying his claim of ineffective assistance of counsel. Discerning no error, we affirm.

Although Brown does not challenge the sufficiency of the evidence to support his conviction, we recount it briefly for clarity. Construed most favorably in support of the verdict, the evidence shows that at 10:00 p.m. on February 6, 2008, Angelo Thomas Traficanti was withdrawing money from a drive-through Wachovia ATM on Jonesboro Road in Clayton County when a man appeared by his car window and pointed a gun at his face. The robber grabbed the money, $100 in $20 bills, and ordered Traficanti to withdraw an additional $200. The robber grabbed that money as well and then fled. Traficanti called 911 and described the robber as African-American, approximately six feet six to six feet eight inches tall, and reported that he was wearing a black and white bandanna covering his face, a black stocking hat, and black clothing. A police officer patrolling the area quickly spotted Brown jumping into his car, which was parked one building north of the Wachovia. After ordering Brown to exit his vehicle, the officer saw a black and white bandanna hanging out of Brown's front pocket. Brown was detained, and Traficanti was brought to the scene. Traficanti identified Brown as the robber. The police arrested Brown and searched his car, finding $300 in $20 bills, a small caliber handgun, and a stocking cap. The robbery was captured on the bank's surveillance camera, and photographs of the robber taking the victim's money at gunpoint were introduced into evidence. This evidence is sufficient to support Brown's conviction under the standard set forth in *Jackson v. Virginia*.[1]

1. Brown first contends that the trial court erred in replacing two jurors on the jury panel. After Brown, who is African-American, used all of his peremptory strikes against Caucasian members of the venire, the state made a motion asserting that the defense had exercised its strikes in a racially discriminatory manner, as prohibited by *Georgia v. McCollum*.[2] The trial court agreed as to two of the peremptorily-struck jurors and ordered them seated on the panel. We find no error.

A trial court must employ a three-step procedure when presented with a *McCollum* challenge.[3] First, the court must decide whether the state has made out a prima facie case of racial discrimination.[4]

Once a prima facie case is made, the [defense] is required to

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] 505 U. S. 42, 59 (IV) (112 SC 2348, 120 LE2d 33) (1992); accord *Allen v. State*, 280 Ga. 678, 680 (2) (b) (631 SE2d 699) (2006).
[3] *Thomas v. State*, 299 Ga. App. 235, 236 (682 SE2d 325) (2009).
[4] Id.

set forth a race-neutral, case-related, clear and reasonably specific explanation for the exercise of the peremptory strike. . . . It is then for the trial court to determine, after considering the totality of the circumstances, whether the [state] has shown that the [defense] was motivated by discriminatory intent in the exercise of the peremptory challenge. The [state] may carry its burden of persuasion by showing that similarly-situated members of another race were seated on the jury. A trial court may also determine that improper discriminatory motive underlay the exercise of a peremptory challenge when the race-neutral explanation proffered by the [defense] is so implausible or fantastic that it renders the explanation pretextual. The trial court's findings concerning whether the [state] has carried the burden of persuasion are entitled to great deference and will be affirmed unless clearly erroneous.[5]

In the case at bar, the trial court properly followed the three-step process and did not clearly err in its findings. First, the court correctly found that the state made out a prima facie case of racial discrimination by showing that Brown used all of his peremptory challenges against Caucasian jurors.[6] The court then shifted the burden of production to the defense to give race-neutral explanations for the strikes.[7] Counsel stated that he struck juror 175 because his son had been the victim of a car theft and the thief was never arrested, so counsel believed that the juror might be biased in favor of the prosecution. Counsel explained that he struck juror 177 because that juror had been the foreperson on a criminal jury and counsel "didn't want on too strong a personality." After hearing these reasons, the trial court ruled that the burden of persuasion reverted to the state. Concerning juror 175, the state pointed out that Brown had not struck a juror whose tools were stolen from her truck. Regarding juror 177, the state noted that defense counsel did not strike another juror who had been a jury foreperson three times, although this juror had been the victim of a hate crime. Counsel admitted that he did not strike similarly-situated jurors.[8] The trial

---

[5] (Citations and punctuation omitted.) *Turner v. State*, 267 Ga. 149, 151 (2) (476 SE2d 252) (1996); accord *Demery v. State*, 287 Ga. 805, 808 (2) (700 SE2d 373) (2010).

[6] *Rose v. State*, 287 Ga. 238, 240 (2) (695 SE2d 261) (2010); *Tillman v. State*, 240 Ga. App. 78-79 (1) (522 SE2d 557) (1999).

[7] *Thomas*, supra.

[8] Counsel argued at trial that the similarly-situated jurors whom he did not strike were Caucasian, so his decision to exercise peremptory strikes against jurors 175 and 177 was not

court accepted defense counsel's explanations for seven of the nine strikes. However, the court found that the state had carried its burden of persuasion regarding racial motivation as to jurors 175 and 177, and seated them on the jury.

Brown contends that the trial court's choice of remedy violated his rights to a fair trial and an impartial jury because he had provided race-neutral explanations for the strikes. Even assuming arguendo that the reasons proffered by the defense were facially race-neutral, that does not end our inquiry, however, because "[i]n the situation in which a racially-neutral reason for the strike is given, the trial court must ultimately decide the credibility of such explanation."[9] Thus, "although a trial judge must accept a facially race-neutral explanation *for purposes of determining whether the proponent has satisfied his burden of production at stage two*, this does not mean that the judge is bound to *believe* such explanation at stage three."[10] In its order denying Brown's motion for new trial, the trial court clarified that it found the explanations pretextual after "reviewing the strikes, listening to the attorney's purported reasons and observing his demeanor. This court also considered in assessing the veracity of the attorney in striking the jurors, that he failed to strike similarly situated jurors." "[A] trial court's determination of a *McCollum* challenge rests largely on assessing the attorney's credibility and state of mind and therefore lies peculiarly within the province of the trial judge."[11] Accordingly, "where, as here, racially-neutral reasons are given, the ultimate inquiry for the trial court is not whether counsel's reasons are suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based."[12] Because the third step of the *McCollum* procedure requires the trial court to act as the trier of fact, its findings are entitled to great deference and will be affirmed unless clearly erroneous.[13] Applying the appropriately deferential standard of review, we conclude that, under the totality of the circumstances, the trial court did not clearly err in finding that the state had shown

---

racially motivated. This argument has not been raised on appeal, however, so we do not consider it. Moreover, voir dire was not transcribed, and the racial makeup of the similarly-situated jurors was not stated on the record, so we would have no method by which to evaluate it. See *Bass v. State*, 271 Ga. App. 228, 233 (4) (609 SE2d 386) (2005).

[9] (Citation omitted.) *Stokes v. State*, 281 Ga. 825, 829 (3) (642 SE2d 82) (2007).

[10] (Emphasis in original.) *McKenzie v. State*, 227 Ga. App. 778, 779 (1) (490 SE2d 522) (1997).

[11] (Punctuation and footnote omitted.) *Hicks v. State*, 281 Ga. App. 217, 219 (2) (635 SE2d 830) (2006).

[12] (Citation and punctuation omitted.) *Smith v. State*, 264 Ga. 449, 454 (4) (448 SE2d 179) (1994).

[13] *Stokes*, supra.

that Brown was motivated by discriminatory intent in the exercise of the two peremptory strikes at issue.[14]

Finally, we reject Brown's contention that the trial court, having found the state's *McCollum* challenge meritorious, erred by reseating the affected jurors. The Supreme Court of Georgia has approved the practice of remedying *Batson* violations by reseating jurors who remain unaware of the party who struck them.

> The prohibition of the discriminatory exercise of peremptory challenges does not violate a defendant's Sixth Amendment right to a trial by an impartial jury. When a [*McCollum*] challenge results in a finding that jury selection was not racially neutral and when, as here, the jurors remain unaware of the party who struck them, reinstating improperly challenged jurors does not abridge the defendant's right to a fair and impartial jury.[15]

Here, the order denying Brown's motion for new trial reflects that the trial court used the silent strike method whereby the attorneys strike jurors by random numbers, so that the jurors remain unaware of the party who excused them. The trial court did not err in seating the two jurors at issue.

2. Brown enumerates as error the denial of his motion to suppress evidence obtained as a result of the warrantless search of his vehicle. Brown asserts that the search was illegal because the arrest from which it flowed was not supported by probable cause. We disagree.

> When we review a trial court's decision on a motion to suppress, the evidence is construed most favorably to uphold the findings and judgment of the trial court; the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous and will not be disturbed if there is any evidence to support them.[16]

So viewed, the evidence adduced at the suppression hearing shows that, on the night of the robbery, Forest Park Police Officer Stephen Geeslin heard the dispatcher's report of an armed robbery at Wachovia and responded to the scene within 30 seconds. Geeslin

---

[14] See *McKee v. State*, 277 Ga. 577, 581 (8) (591 SE2d 814) (2004) (*McCollum* challenge sustained where defense had not struck several other venire persons who were crime victims).

[15] (Citations and punctuation omitted.) *Holmes v. State*, 273 Ga. 644, 646 (2) (543 SE2d 688) (2001).

[16] (Citation omitted.) *Solis v. State*, 268 Ga. App. 493, 494 (1) (602 SE2d 166) (2004).

testified that the dispatcher reported, among other things, that the robber had fled on foot toward a storage facility. Geeslin proceeded to the Forest Park Shopping Center because of its proximity to the storage facility. The dispatcher reported that the suspect was wearing black clothing, including a black stocking cap and black bandanna imprinted with white designs.

Geeslin approached the shopping center with his vehicle "blacked out," meaning without illumination, and observed a male matching the description come from behind a building and quickly get into a car. Geeslin pulled up behind the car, turned on his spotlight, and ordered Brown to get out. Brown was dressed in black clothing and a black and white bandanna was hanging out of his pocket. According to Geeslin, officer Larry McAllister, who was with the victim, reported that Brown was armed with a small handgun, and confirmed the description of his clothing.

Backup arrived to assist Geeslin, and Brown was detained. Geeslin asked what Brown was doing behind the building, and Brown stated that he "needed to take a piss." McAllister brought the victim to Geeslin's location, and the victim identified Brown as the robber. Brown was placed under arrest. The trial court ruled that the police had probable cause to arrest Brown.

Brown complains that, because McAllister did not testify at the hearing, any information he may have relayed to dispatch or to Geeslin was hearsay and was inadmissible to establish probable cause. This contention is meritless. Probable cause "can rest upon the collective knowledge of the police when there is some degree of communication between them."[17] Moreover, "[o]fficers are entitled to rely on information provided by other officers or by their dispatcher when asked to be on the lookout for a certain vehicle or suspects. There is no requirement that the officer or officers providing the information testify at the motion to suppress [hearing]."[18]

> Whether the arrest was constitutionally valid depends upon whether, at the moment the arrest was made, the officers had probable cause to make it — whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the

---

[17] *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996), citing *Goodman v. State*, 255 Ga. 226, 229 (13) (336 SE2d 757) (1985).

[18] (Citations omitted.) *Edmond v. State*, 297 Ga. App. 238, 239 (676 SE2d 877) (2009).

person suspected had committed or was committing an offense.[19]

In the case at bar, the trial court found that within a very short time after the robbery occurred, Geeslin saw a person who matched the robber's physical description, wearing the clothing described by the victim, traveling on foot in the direction in which the victim indicated he would be walking, and quickly entering a vehicle in the shopping center closest to the scene of the crime. Geeslin was informed by McAllister, who brought the victim to the scene, that the victim identified Brown as the robber. The trial court's findings concerning the existence of probable cause were not clearly errone-ous, and Brown's motion to suppress was properly denied.[20]

3. Brown further contends that the identification on which the trial court relied in finding probable cause was improperly admitted in evidence. In a related enumeration of error, Brown argues that the trial court erred by hearing the motion to suppress evidence prior to hearing his motion to suppress the identification. Brown has waived these contentions, however.

At the hearing on the motion to suppress evidence, Geeslin testified on cross-examination concerning the descriptions of the suspect's clothing that were relayed from the dispatcher and from McAllister. Geeslin also testified that Brown was not placed under arrest for armed robbery until after the victim identified him. Brown then asked Geeslin, "you could have taken him down to the station and actually put him in front of a lineup if you wanted to, correct?" Geeslin responded, "[a] lineup for what?" The trial court com-mented: "That's the I.D. that we're going to hear immediately prior [to] trial." Brown responded, "I agree, Your Honor, I understand." Next, at the conclusion of the hearing on Brown's motion to suppress the identification, his counsel conceded that "there was no problem with the way the identification . . . was presented."

By his acquiescence, Brown has waived any purported error regarding the admission of identification evidence or the scheduling of the suppression hearings. "No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain

---

[19] (Citation and punctuation omitted.) *Self v. State*, 245 Ga. App. 270, 274 (3) (b) (537 SE2d 723) (2000).

[20] See *Davis v. State*, 304 Ga. App. 355, 358 (1) (a) (696 SE2d 381) (2010) (probable cause existed to arrest defendant based on witness's description communicated to responding officers and fact that they found him near the scene of the shooting shortly after it occurred).

further."[21]

4. Brown argues that he was denied the right to fair trial due to prosecutorial misconduct during closing argument, in violation of OCGA § 17-8-75.[22] He further contends that the prosecutor improperly commented upon his right to remain silent. These contentions have been waived by Brown's failure to assert them at trial.

During closing argument, the prosecutor stated that "there is no evidence to refute the fact that there was a robbery at the Wachovia Bank. . . . [T]here's no disputing that . . . there was a gun found in the car. There's a presumption in Georgia that if you are the driver of a vehicle you own everything in that car." The trial court, sua sponte, interjected: "That law will not be given to the jury in this case. It's not found to be appropriate and therefore you cannot argue law that will not be given by the court to the jury." When the prosecutor resumed, she argued: "So when this gun was found was any explanation given? No. Any explanation at all? No. He just happened to have $300, all in twenties, a bandanna that matches the description, a cap, and a gun." This time, the trial court rebuked the prosecutor at length and gave the jury curative instructions.

In *Mallory v. State*,[23] our Supreme Court held that a comment upon a defendant's silence or failure to come forward "will not be allowed even where the defendant has not received *Miranda* warnings and where he takes the stand in his own defense."[24] Brown contends that the trial court's rebuke to the prosecutor and its instructions to the jury were insufficient corrective measures. However, Brown did not object to closing argument, move for a mistrial, or except to the trial court's curative measures. Brown has thus waived this issue.[25]

5. Lastly, Brown argues that the trial court erred in denying his

---

[21] (Punctuation and footnote omitted.) *Garland v. State*, 256 Ga. App. 313, 318 (6) (568 SE2d 540) (2002); accord *Potter v. State*, 301 Ga. App. 411, 416 (2) (687 SE2d 653) (2009) (acquiescence in procedure by which document was identified deprived defendant of right to complain on appeal); *Hightower v. State*, 205 Ga. App. 305, 308 (3) (422 SE2d 28) (1992) (acquiescence in voice identification procedure constituted waiver).

[22] OCGA § 17-8-75 provides:
Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

[23] 261 Ga. 625 (409 SE2d 839) (1991), overruled on other grounds, *Clark v. State*, 271 Ga. 6, 9-10 (5) (515 SE2d 155) (1999).

[24] Id. at 630 (5).

[25] See *Landers v. State*, 270 Ga. 189, 190-191 (2) (508 SE2d 637) (1998) (state improperly commented upon defendant's silence during argument but error not preserved for appellate review due to counsel's failure to object).

motion for new trial on the basis of ineffective assistance of trial counsel. He asserts that trial counsel's performance was deficient in eight respects and that these deficiencies prejudiced him.

> In order to prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Failure to satisfy either prong of this test is fatal to an ineffectiveness claim. Moreover, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. We defer to the trial court's factual findings on this issue unless they are clearly erroneous, while we independently apply the legal principles to the facts. Finally, we will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result.[26]

(a) Brown contends that trial counsel was ineffective in failing to move for a mistrial when the prosecutor improperly commented upon his right to remain silent. This argument fails, because the trial court's instructions were sufficient to cure any prejudice to Brown. "Where an instruction by the trial court would cure any unfair prejudice to the defendant, a mistrial is not essential to the preservation of the right to a fair trial."[27] At the new trial hearing, trial counsel explained his reasons for not seeking a mistrial, and Brown "has not shown either that counsel's tactical decision not to move for a mistrial was outside the range of reasonably effective assistance or that a mistrial would have been granted but for counsel's decision to forego requesting one."[28]

(b) Brown alleges that trial counsel was ineffective in failing to object to leading questions asked by the prosecutor. Trial counsel testified that he elected not to object to leading questions because

---

[26] (Punctuation and footnotes omitted.) *Nichols v. State*, 288 Ga. App. 118, 120-121 (3) (653 SE2d 300) (2007).

[27] (Footnote omitted.) *Adams v. State*, 300 Ga. App. 775, 776 (686 SE2d 390) (2009), citing *Berryhill v. State*, 285 Ga. 198, 203 (5) (674 SE2d 920) (2009) (where trial court gave an appropriate curative instruction, there was no abuse of discretion in denying the motion for mistrial).

[28] (Citation omitted.) *Sweet v. State*, 278 Ga. 320, 325 (8) (602 SE2d 603) (2004).

they were not harmful. "[D]ecisions as to whether to interpose certain objections fall within the realm of trial tactics and strategy and usually provide no basis for reversal of a conviction, nor do they amount to ineffective assistance of counsel."[29]

(c) Brown argues that the one-on-one showup procedure was impermissibly suggestive and that, as a result, trial counsel was ineffective for "abandoning" the motion to suppress identification. Pretermitting whether the showup procedure was impermissibly suggestive,[30] we conclude that trial counsel's decision not to challenge the procedure was reasonable trial strategy. At the hearing on the motion to suppress, the victim testified that he could not identify Brown's face because he had been wearing a mask, and that he identified Brown at the scene by his clothing and his height. At the hearing on the motion for new trial, trial counsel explained that he did not argue that the identification procedure was impermissibly suggestive because the victim testified that he was unsure that Brown was the person who robbed him. "Review of counsel's performance must be highly deferential; tactical decisions amount to ineffective assistance only if so patently unreasonable that no competent attorney would have chosen them."[31] We conclude that counsel's tactical decision fell within the wide range of reasonable, professional conduct.

Brown further complains that his trial counsel should have cross-examined the victim more strenuously on this issue. "The scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel."[32] Here, the victim's identification testimony at trial was weak. He testified that he could not be certain that the person he identified on the night of the robbery was Brown. Trial counsel elicited on cross that the victim "may have been wrong" about the color of the bandanna Brown wore. Brown has failed to show what favorable evidence could have been elicited from the victim by any different cross-examination. Accordingly, Brown has failed to meet his burden of showing deficient performance and prejudice from his counsel's actions.[33]

(d) Brown contends that trial counsel was ineffective for failing

---

[29] (Citation and punctuation omitted.) *Reynolds v. State*, 269 Ga. App. 268, 271 (2) (603 SE2d 779) (2004).

[30] See, e.g., *Miller v. State*, 266 Ga. App. 378, 382 (1) (597 SE2d 475) (2004) (factors used to decide admissibility of showup identification).

[31] (Citation and punctuation omitted.) *Buchanan v. State*, 273 Ga. App. 174, 180 (2) (614 SE2d 786) (2005).

[32] (Citation and punctuation omitted.) *Cooper v. State*, 281 Ga. 760, 762 (4) (a) (642 SE2d 817) (2007).

[33] See *Lawrence v. State*, 286 Ga. 533, 534 (2) (690 SE2d 801) (2010).

YALE LAW LIBRARY

to object to the introduction of photographs of currency and bank video surveillance where no foundation was laid. Trial counsel testified that he made a strategic decision not to require the state to bring in authenticating witnesses because he had verified the authenticity of the photographs prior to trial. Moreover, counsel was aware of additional damaging evidence in Wachovia's possession and was concerned that the state might seek to introduce it if a witness testified for the bank. "The matter of when and how to raise objections is generally a matter of trial strategy. Here, it cannot be said that trial counsel's decision to forego objection was a professionally unreasonable choice."[34]

(e) Brown complains that trial counsel was ineffective for failing to challenge hearsay testimony during the hearing on his motion to suppress evidence. Any such objection would have been futile, however, because the testimony at issue was properly admitted under the collective knowledge rule. See Division 2. "Since any objection trial counsel could have made would have been meritless and failure to make a meritless objection cannot be evidence of ineffective assistance, [Brown's] claim of ineffectiveness fails."[35]

(f) Brown's three remaining allegations of ineffectiveness are not supported by argument or citation to authority and are hereby waived.[36]

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 11, 2011.

*Davis Bozeman, Tawanna K. Morgan*, for appellant.
*Tracy Graham-Lawson, District Attorney, Caroline C. Owings, Assistant District Attorney*, for appellee.

---

[34] (Citations and punctuation omitted.) *Robinson v. State*, 278 Ga. 31, 36 (3) (c) (597 SE2d 386) (2004).

[35] (Punctuation and footnote omitted.) *Kilgore v. State*, 291 Ga. App. 892, 898 (3) (663 SE2d 302) (2008).

[36] See *Mora v. State*, 295 Ga. App. 641, 646 (3) (673 SE2d 23) (2009).